**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X   Case No.
SHEENA SMITH,

                                     Plaintiff,                             **COMPLAINT**

    -against-

                                                                   *PLAINTIFF DEMANDS*
AFRICAN AMERICAN PLANNING                   *A TRIAL BY JURY*
COMMISSION, INC.,

                                     Defendant.
---------------------------------------------------------------------------X

        Plaintiff, SHEENA SMITH, by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, Attorneys at Law, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 (the "PDA"), 42 U.S.C. § 2000e(k); the New York State Human Rights Law, New York State Executive Law § 296 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.*, and seeking damages to redress the injuries she has suffered as a result of being **discriminated against** on the basis of her **sex/gender (female) and pregnancy**.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343 as this action arises under 42 U.S.C. § 2000e, *et seq.*

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under State and City law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Eastern District of New York, or the acts complained of occurred therein.

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 17, 2023; (b) receiving a Notice of Right to Sue from the EEOC on December 4, 2023; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

6. That at all times relevant hereto, Plaintiff SHEENA SMITH ("Plaintiff") is a resident of the State of New York, County of Kings.

7. That at all times relevant hereto, Defendant African American Planning Commission Inc. ("AAPCI") is a 501(c)(3) doing business in New York located at 630 Flushing Avenue, 3rd Floor, Suite 316, Brooklyn, New York 11206.

## MATERIAL FACTS

8. In or about November 2020, Plaintiff began working for Defendant AAPCI as a Residential Aide, making approximately $19.23 per hour and working full time.

9. Plaintiff worked primarily at AAPCI's BPM Men's Shelter, located at 139 33rd Street, Brooklyn, New York 11232.

10. In or about February 2022, Plaintiff learned that she was pregnant. At that time, Plaintiff told several of her co-workers that she was pregnant – including Plaintiff's operation manager Mitchel Raife ("Raife").

11. In or about April or May 2022, Robert Stroud ("Stroud") began working at AAPCI as a Program Director.

12. Upon information and belief, Stroud came to learn of Plaintiff's pregnancy through passive general awareness, as it was well known at the BPM shelter that Plaintiff was pregnant.

13. In or about June 2022, Plaintiff expressed interest in a case manager position that was available at the BPM Men's shelter.

14. The case manager position would have been a role with substantially more responsibility and a pay rate of $27.00 per hour.

15. In response to Plaintiff's demonstrated interest, Robert Stroud called Plaintiff into his office with Director of Social Services Chris Teesdale ("Teesdale") to tell her that she was going to be given the case manager position and would begin training with Teesdale.

16. Approximately two weeks after the meeting with Stroud and Teesdale, Plaintiff began training with Teesdale.

17. On or about July 21, 2022, Plaintiff reported to Teesdale as usual to continue her training. To her surprise, Teesdale informed Plaintiff that she would no longer be handling training and that Plaintiff was to discuss further details with Stroud.

18. When Plaintiff questioned Stroud as to why she would no longer be training with Teesdale, Stroud replied that he would be holding off on giving Plaintiff the case manager position, citing that he would be short staffed when Plaintiff took maternity leave.

19. Stroud further stated that Plaintiff could come back for the role when she returned from maternity leave.

20. Shocked and dismayed by Stroud's discriminatory reasoning for withholding the case manager position and accompanying pay increase from her, Plaintiff inquired as to who the position would be given to in lieu of her receiving it. Stroud replied that Isaac King ("King"), a male employee, would be receiving the position.

21. Plaintiff understood that King was a member of the armed forces and took military leave each month, meaning his assumption of the case manager role would further create open scheduling issues for Stroud and AAPCI.

22. Plaintiff reminded Stroud that King would also take leave often, leaving Stroud shorthanded. Stroud brushed this fact off and did not further address the matter with Plaintiff.

23. On July 21, 2022, at 2:41 PM, Plaintiff memorialized her conversation with Stroud in email and copied Teesdale and Raife.

24. At 3:24 PM that same day, Plaintiff forwarded the above email to Human Resources employee Juanita Belmar ("Belmar"). In that email, she stated that "I [Plaintiff] feel that I am being robbed of this promotion….Its very unfair and I feel as if this is a form of discrimination. My pregnancy should not dictate my growth & future within this company."

25. At 4:44 PM, Belmar replied to Plaintiff's email, inviting her to interview for the case manager position. Plaintiff found this invitation to be unnecessary and offensive, as she had already been offered the position, begun training, and subsequently had the position taken away from her due to her status as a pregnant woman.

26. Instead of scheduling an interview for the case manager position, Belmar met with Plaintiff to talk about the email Plaintiff had previously sent and her pregnancy leave. When Plaintiff reiterated her interest in the case manager position, Belmar switched the subject.

27. Plaintiff was disheartened and upset by her meeting with Belmar, so much so that she texted Belmar after and inquired about a lesser position of shift lead with a pay rate of $21.98 per hour, since there was so much resistance to Plaintiff obtaining the case manager role. Belmar told Plaintiff to apply to the lesser position.

28. Plaintiff applied to this lesser position, which was for a shift lead. Plaintiff received this position.

29. In or about August 2022, Plaintiff called out sick from work. When she called out, Stroud told Plaintiff that she "couldn't keep calling out sick," and that people didn't want to give Plaintiff the original case manager promotion because her pregnancy would lead to more sick day absences.

30. Additionally, Stroud stated to Plaintiff, in sum and substance, that "since you're pregnant, some females don't even return back to work after having a baby."

31. On or about October 25, 2022, Plaintiff reported to work for the last time, as she gave birth to her child the following day, October 26, 2022.

32. On or about November 22, 2022, while still out on Maternity leave, Plaintiff again complained to Belmar in human resources, stating she felt discriminated against on the basis of her pregnancy status and gender (female). In sum and substance, Plaintiff reiterated the above timeline in detail in this email.

33. On the same day, Belmar emailed Plaintiff back acknowledging her complaint, stating that she would reply to Plaintiff's complaint soon.

5

34. On November 23, 2022, Plaintiff informed Belmar of her intention to return to work on December 27, 2022, and attached an accompanying doctor's note.

35. As stated above, Plaintiff applied for and was qualified for several promotions with Defendant and was nonetheless rejected for those positions despite her qualifications. Meanwhile, another equally or less qualified and similarly situated employee who was not a pregnant woman was hired to the position originally promised to Plaintiff.

36. Defendant and its agents had no legitimate business reason for failing to promote Plaintiff.

37. Defendant failed to promote Plaintiff solely because she was a pregnant woman.

38. **As demonstrated by the foregoing, Plaintiff was discriminated against and refused a promotion based solely on her sex/gender (female) and her pregnancy.**

39. As a result of Defendant's actions, Plaintiff felt and feels humiliated, degraded, victimized, embarrassed, and emotionally distressed because of the discrimination she experienced during her pregnancy, a time when Plaintiff expected to be at her happiest.

40. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, including retirement contributions, growth potential within the company, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional distress.

41. Defendant's intentional actions and conduct caused harm to Plaintiff.

42. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court.

43. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

44. As such, Plaintiff demands punitive damages against Defendant.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

45. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

46. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendant AAPCI. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy and gender (female).

47. Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her pregnancy and gender (female).

## AS A SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

49. Executive Law § 296 provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment

50. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her pregnancy and her sex/gender (female).

7

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52. The Administrative Code of City of New York § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

53. Defendant engaged in an unlawful discriminatory practice in violation of the Administrative Code of City of New York § 8-107(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender and pregnancy, thus denying her the benefits of her employment and a promotion.

## PUNITIVE DAMAGES

54. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

55. As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against Defendant.

## JURY DEMAND

56. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the

8

**Title VII of the Civil Rights Act of 1964, New York State Human Rights Law**, and the **New York City Administrative Code**, in that Defendant discriminated against Plaintiff on the basis of her pregnancy and gender.

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State law claims;

D. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury; distress; pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G. An award of prejudgment and post judgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

H.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:  New York, New York
           February 28, 2024

 

**PHILLIPS & ASSOCIATES, PLLC**
**ATTORNEYS AT LAW**

By: _____
Morgan Mickelsen, Esq.
Brittany A. Stevens, Esq.
*Attorneys for the Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248–7431
F: (212) 901–2107
mmickelsen@tpglaws.com
bstevens@tpglaws.com